UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT V. BRISCOE,

                              Plaintiff,

            -v-

DETECTIVE STEVEN D'AGATA and
CORRECTION OFFICER COMPASSO,

                              Defendants.

Case No. 14-CV-7384 (KMK)

OPINION & ORDER

Appearances:

Robert V. Briscoe
Malone, NY
*Pro Se Plaintiff*

Michael Davidoff, Esq.
Drew, Davidoff & Edwards Law Offices, LLP
Monticello, NY
*Counsel for Defendant Correction Officer Compasso*

KENNETH M. KARAS, District Judge:

        Robert V. Briscoe ("Plaintiff"), proceeding pro se, brings this Action against Detective

Steven D'Agata ("D'Agata") and Correction Officer Thomas Compasso ("Compasso"), pursuant

to 28 U.S.C. § 1983.  (Dkt. No. 37.)  Before the Court is Compasso's Motion for Summary

Judgment ("Motion").  (Dkt. No. 67.)  For the reasons explained herein, the Motion is granted.

I.  Background

    A.  Factual Background

        Plaintiff was an inmate at the Sullivan County Jail (the "Jail") from December 29, 2011

to July 9, 2012, as a result of being charged with the crime of rape in the third degree.  (Moving

Def.'s Local Rule 56.1 Statement ("Def.'s 56.1") ¶¶ 5, 7 (Dkt. No. 73); Aff. of Harold Smith, Jr.

("Smith Aff.") ¶ 2 (Dkt. No. 69).)[1]  Plaintiff previously had been an inmate at the Jail on at least

three separate occasions.  (Def.'s 56.1 ¶¶ 5, 12; Smith Aff. ¶ 2; Aff. of Michael Davidoff

("Davidoff Aff.") Ex. B ("Pl.'s Dep.") 30–31 (Dkt. No. 75).)[2]  Upon his incarceration in

December 2011, Plaintiff received a copy of the Sullivan County Jail Inmate Rule Book (the

---

[1] Local Civil Rule 56.1(a) requires the moving party to submit a "short and concise
statement, in numbered paragraphs, of the material facts as to which the moving party contends
there is no genuine issue to be tried."  The nonmoving party, in turn, must submit "a
correspondingly numbered paragraph responding to each numbered paragraph in the statement of
the moving party, and if necessary, additional paragraphs containing a separate, short and
concise statement of additional material facts as to which it is contended that there exists a
genuine issue to be tried."  Local Civ. R. 56.1(b).  "A pro se litigant is not excused from this
rule," *Brandever v. Port Imperial Ferry Corp.*, No. 13-CV-2813, 2014 WL 1053774, at *3
(S.D.N.Y. Mar. 13, 2014) (italics omitted), and "[a] nonmoving party's failure to respond to a
Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are
uncontested and admissible," *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009);
*see also Biberaj v. Pritchard Indus., Inc.*, 859 F. Supp. 2d 549, 553 n.3 (S.D.N.Y. 2012) (same).
Here, Compasso filed and served his statement pursuant to Rule 56.1, (Dkt. No. 73), and
filed and served a statement notifying Plaintiff as to the potential consequences of not responding
to the Motion, as required by Local Rule 56.2, (Dkt. No. 74).  Despite this notice, Plaintiff failed
to submit a response.  (*See generally* Dkt.)  Accordingly, the Court could conclude that the facts
in Compasso's Rule 56.1 Statement are uncontested and admissible.  *See* Local R. 56.1(c)
(instructing that where a paragraph is not specifically controverted by the opposing party, it "will
be deemed to be admitted for purposes of the motion"); *accord Giannullo v. City of N.Y.*, 322
F.3d 139, 140 (2d Cir. 2003) ("If the opposing party then fails to controvert a fact so set forth in
the moving party's Rule 56.1 statement, that fact will be deemed admitted.").  Nevertheless, in
his opposition papers, Plaintiff makes several statements about the facts of this case.  (*See* Pl.'s
Affirm. in Opp'n to Mot. ("Pl.'s Opp'n") (Dkt. No 82).)  Recognizing that pro se litigants are
entitled to "special solicitude . . . when confronted with motions for summary judgment,"
*Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988), the Court considers these statements to
determine whether there are any material issues of fact based on the evidence in the record, *see
Cherry v. Byram Hills Cent. Sch. Dist.*, No. 11-CV-3872, 2013 WL 2922483, at *1 (S.D.N.Y.
June 14, 2013) ("[W]here a pro se plaintiff fails to submit a proper . . . Rule 56.1 statement in
opposition to a summary judgment motion, the [c]ourt retains some discretion to consider the
substance of the plaintiff's arguments, where actually supported by evidentiary submissions."
(italics and internal quotation marks omitted)).  For ease of reference, the Court cites to
Compasso's Rule 56.1 Statement when the facts are not in dispute.  When citing to Plaintiff's
Affirmation in Opposition to the Motion, the Court, for the sake of clarity, will refer to the ECF-
generated page numbers stamped at the top of the document.

[2] Exhibit B of the Davidoff Affidavit contains the transcript from a portion of Plaintiff's
deposition conducted on October 7, 2015.  (*See* Davidoff Aff. ¶ 14.)

"Rule Book"), which contains the grievance procedure for inmates of the Jail.  (Def.'s 56.1 ¶¶ 11, 13–14; Smith Aff. ¶¶ 3–4; Pl.'s Dep. 29–30, 98; *see also* Smith Aff. Ex. B.)  He also received a copy of the Rule Book upon each of his prior occasions of incarceration at the Jail. (Def.'s 56.1 ¶¶ 12, 14; Smith Aff. ¶ 4; Pl.'s Dep. 31, 98.)

From 1999 to 2005 and from 2009 through the present, Compasso has worked as a correction officer at the Jail.  (Aff. of Thomas Compasso ("Compasso Aff.") ¶ 2 (Dkt. No. 68).) During the period of Plaintiff's incarceration, Compass would occasionally work on C-Block 1, (Def.'s 56.1 ¶ 8; Compasso Aff. ¶ 3), where Plaintiff was housed, (Def.'s 56.1 ¶ 21; Pl.'s Dep. 57).[3]  Plaintiff alleges that, in April or May 2012, Compasso intentionally manipulated the shower water controls to cause Plaintiff to be subjected to hot water.  (Def.'s 56.1 ¶ 6; *see also* Second Am. Compl. § II.D (alleging that Compasso "changed the water temperature while [Plaintiff] was taking a shower, to boiling hot water by shutting off the cold water valve").)[4] Compasso categorially denies this allegation.  (Compasso Aff. ¶¶ 4–5, 9, 14–15.)  According to Plaintiff, he was able to observe Compasso manipulate the plumbing behind the shower stall in the gangway area by looking through holes around the hot and cold faucets.  (Def.'s 56.1 ¶ 23; Pl.'s Dep. 59–60, 62.)  However, following renovations in 2007, any such holes in the shower wall of C-Block 1 had been removed, and the hot and cold faucets had been replaced with a

---

[3] Prior to the alleged incident giving rise to this Action, Plaintiff had had no problems with Compasso or anyone else on C-Block.  (Def.'s 56.1 ¶ 21; Pl.'s Dep. 57–59.)

[4] The Second Amended Complaint identifies April 2012 as the month of the events giving rise to Plaintiff's claim against Compasso.  (*See* Second Am. Compl. § II.C.)  At his deposition, Plaintiff averred that the incident occurred in April or May 2012, (*see* Pl.'s Dep. 33, 38), and his opposition papers indicate May 23, 2012 as the date he sought medical treatment for the alleged injuries that resulted, (*see* Pl.'s Opp'n 5–6).  With the "special solicitude" owed to pro se litigants, *see Graham*, 848 F.2d at 344, the Court will look to the broader timeframe of April-May 2012 in resolving the instant Motion.  However, the exact date of the alleged incident is of little moment for present purposes.

3

single push button.  (Def.'s 56.1 ¶¶ 24, 44; Smith Aff. ¶¶ 10–11.)  Thus, between December 2011 and July 2012, there were neither holes in the shower wall nor any faucets located in the shower stall.  (Def.'s 56.1 ¶¶ 24, 43; Compasso Aff. ¶¶ 12–15; Smith Aff. ¶ 10; *see also* Compasso Aff. Ex. A; Smith Aff. Ex. E.)[5]

Plaintiff testified that he sought medical attention at the Jail, either the day after the alleged incident or the day following that.  (Def.'s 56.1 ¶ 26; Pl.'s Dep. 77.)  During his deposition, he stated that he told "Nurse Joanne"—presumably a member of the Jail's medical staff, (*see* Def.'s 56.1 ¶ 41)—about being burned, though he did not mention that Compasso was responsible, (*id.* ¶ 18; Pl.'s Dep. 78, 81).[6]  He further stated that during this visit she observed a pimple on his nose, (Def.'s 56.1 ¶ 27; Pl.'s Dep. 80), though he testified that he also had small pimples on his face, chest, and arms, (Def.'s 56.1 ¶ 28; Pl.'s Dep. 81), and that these areas were "beet red," (Def.'s 56.1 ¶ 31; Pl.'s Dep. 82).  The notations in Plaintiff's medical file from May 23, 2012, while mentioning a pimple, contain no reference to Plaintiff having been burned in the shower, nor any mention of his face or any part of his body being beet red or having sustained a burn.  (Def.'s 56.1 ¶¶ 30–31, 41; Aff. of Jamie Gandulla ("Gandulla Aff.") ¶ 12 (Dkt. No. 72); *see generally id.* Ex. A.)[7]  The entry from that date indicates that Plaintiff complained to Nurse

---

[5] Plaintiff disputes this point in his opposition papers, maintaining that the water faucets are located "behind the shower in [the] gangeway [sic]," (Pl.'s Opp'n 6), which is where Compasso allegedly turned off the cold water valve, (*see id.* at 1; *see also* Smith Aff. Ex. D).

[6] In his opposition papers, Plaintiff expressly identifies May 23, 2012 as the date on which he informed Nurse Joanne about being burned by hot water in the shower.  (*See* Pl.'s Opp'n 5.)

[7] While Plaintiff emphasizes that "Nurse *Joanne* is the nurse who *saw* [him]," (Pl.'s Opp'n 8), Nurse Joanne Ozolins is retired and living out of state, (Smith Aff. 2 n.1).  Thus, Jamie Gandulla, the current Nurse Administrator at the Jail, (Gandulla Aff. ¶ 1), conducted the review of Plaintiff's medical record and averred to its contents.

Joanne of an infection on the left side of his nose and received a prescription for benzol peroxide, an over-the-counter acne medication.  (Def.'s 56.1 ¶ 41; Gandulla Aff. ¶ 12; *id.* Ex. A, at unnumbered 15.)[8]  The Jail records for Plaintiff contain no entry for a visit wherein he complained of having sustained any type of burns as a result of an incident that allegedly occurred while he was showering.  (Def.'s 56.1 ¶¶ 38–40, 45; Gandulla Aff. ¶¶ 5, 17; *see generally id.* Ex. A.)

Plaintiff concedes that he did not file a grievance concerning the incident in which he was allegedly burned as a result of Compasso's actions.  (Def.'s 56.1 ¶¶ 17, 33; Pl.'s Dep. 51, 97, 99; *see also* Second Am. Compl. § IV.D.)  Indeed, there is no record of any grievance filed by Plaintiff during the period from December 2011 to July 2012.  (Def.'s 56.1 ¶ 15; Smith Aff. ¶ 5.)  At his deposition, he stated that he "d[id]n't know about a grievance procedure."  (Pl.'s Dep. 97–98.)  However, he testified that no one prevented him from reading the Rule Book, stopped him from filing a grievance, threatened him about filing a grievance, or refused to give him a grievance form.  (Pl.'s Dep. 99–100.)  He also testified to some degree of familiarity with the Rule Book.  (*See id.* at 31, 98.)

During his deposition, Plaintiff initially stated he did not bring the alleged incident to anyone's attention, (Def.'s 56.1 ¶ 18; Pl.'s Dep. 51), but later in his testimony stated that he had told Correction Officers Bell and Washington that Compasso burned him with hot water, (Def.'s 56.1 ¶ 19; Pl.'s Dep. 106–08).[9]  John Bell, a correction officer at the Jail from September 2005

---

[8] In response to this statement, Plaintiff asserts that "Nurse Joanne also gave [him] 'skin creme [sic].'"  (Pl.'s Opp'n 8.)  Yet, the Court sees no factual dispute here, as Compasso's Rule 56.1 Statement defined the prescribed medication as "an acne cream."  (Def.'s 56.1 ¶ 41.)

[9] In his opposition papers, Plaintiff asserts that "[he] didn't tell anyone[] at the time" because "[he] feared for [his] life."  (Pl.'s Opp'n 7.)

through the present, (Aff. of John Bell ¶ 1 (Dkt. No. 71)), testified that he does not recall Plaintiff ever making such a complaint to him, (*id.* ¶ 4).[10]

B.  Procedural Background

Plaintiff commenced the instant Action on September 10, 2014.  (Dkt. No. 1.)  He submitted an Application for the Court to Request Pro Bono Counsel that same day.  (Dkt. No. 4.)  On November 13, 2014, he filed an Amended Complaint against Sullivan County, Town of Liberty, Janet D. Myers, D'Agata, and Compasso.  (Dkt. No. 9.)  By Order dated January 2, 2015, the Court dismissed Plaintiff's claims against Janet D. Myers without prejudice and denied without prejudice Plaintiff's Application for the Court to Request Pro Bono Counsel as well as his similar request in the Amended Complaint.  (Dkt. No. 12.)

Pursuant to an Order from the Court, (Dkt. No. 34), Plaintiff filed a Second Amended Complaint on May 5, 2015, alleging that Compasso and D'Agata violated his constitutional rights, (Dkt. No. 37).  Plaintiff renewed his request for assignment of counsel on August 14, 2015, (Dkt. No 47), which Magistrate Judge Judith C. McCarthy denied without prejudice on August 28, 2015, (Dkt. No. 49).  On October 6, 2015, Compasso filed his Answer to Plaintiff's Second Amended Complaint, including among his affirmative defenses Plaintiff's failure to exhaust his administrative remedies.  (Dkt. No. 57.)

Pursuant to a Scheduling Order adopted by the Court on November 18, 2015, (Dkt. No. 64), Compasso filed his Motion for Summary Judgment and accompanying papers on January 15, 2016, (Dkt. Nos. 67–76).  On January 26, 2016, Plaintiff submitted another request for assignment of counsel, (Dkt. Nos. 77–79), which the Court denied on the basis that Plaintiff had

_____

[10] Correction Officer Washington is no longer employed at the Jail.  (Def.'s 56.1 ¶ 20; Smith Aff. ¶ 12.)

not identified any change in circumstances since the previous denials of the same request, (Dkt. No. 80).  Plaintiff submitted his Affirmation in Opposition to the Motion on February 29, 2016, (Dkt. No. 82), and Compasso submitted his reply on March 18, 2016, (Dkt. No. 85).

## II.  Discussion

### A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same).  "In determining whether summary judgment is appropriate," a court must "construe the facts in the light most favorable to the non-moving party and . . . resolve all ambiguities and draw all reasonable inferences against the movant."  *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal quotation marks omitted); *see also Borough of Upper Saddle River, N.J. v. Rockland Cty. Sewer Dist. No. 1*, 16 F. Supp. 3d 294, 314 (S.D.N.Y. 2014) (same).  "It is the movant's burden to show that no genuine factual dispute exists."  *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 521 (S.D.N.Y. 2015) (same).

 "However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," in which case "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alterations and internal quotation marks omitted).  Further, "[t]o survive a [summary judgment] motion . . . , [a nonmovant] need[s] to create more than a 'metaphysical'

possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. Cty. of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (internal quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . .").

On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (internal quotation marks omitted).  At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod*, 653 F.3d at 164 (internal quotation marks omitted).  Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharm. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).  Finally, the Second Circuit has instructed that "special solicitude" should be afforded a pro se litigant a motion for summary judgment, *see Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988); *see also Berry*, 137 F. Supp. 3d at 522 (same), whereby a court should construe "the submissions of a pro se litigant . . . liberally" and interpret them "to raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (italics and internal quotation marks omitted).

B.  Materials Considered in Deciding this Motion

When ruling on a motion for summary judgment, a district court should only consider evidence that would be admissible at trial.  *See Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998).  "[W]here a party relies on affidavits . . . to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated.'"  *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)); *see also Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) ("Rule 56 requires a motion for summary judgment to be supported with affidavits based on personal knowledge . . . ."); *Baity v. Kralik*, 51 F. Supp. 3d 414, 419 (S.D.N.Y. 2014) (disregarding "statements not based on [the] [p]laintiff's personal knowledge"); *Flaherty v. Filardi*, No. 03-CV-2167, 2007 WL 163112, at *5 (S.D.N.Y. Jan. 24, 2007) ("The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge." (internal quotation marks omitted)); *Zigmund v. Foster*, 106 F. Supp. 2d 353, 356 (D. Conn. 2000) (noting that "[a]n affidavit in which the plaintiff merely restates the conclusory allegations of the complaint" is insufficient to support a motion for summary judgment).

In addition, "a pro se party's bald assertion, completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment."  *Berry*, 137 F. Supp. 3d at 519 (internal quotation marks omitted); *see also Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) ("The non-moving party may not rely on conclusory allegations or unsubstantiated speculation.").  The Court, therefore, disregards assertions in Plaintiff's opposition papers that are not supported by admissible evidence.  *See Mitchell v. Igoe*, No. 06-CV-186, 2009 WL 3165659, at *8 (N.D.N.Y. Sept. 25, 2009) ("Statements contained within a memorandum . . . without proper evidentiary

support, do not constitute competent evidence upon which a court may base its ruling upon a

motion for summary judgment."), *aff'd*, 407 F. App'x 536 (2d Cir. 2011).

    C.  Analysis

    Plaintiff alleges that Compasso violated his constitutional rights by burning Plaintiff with

hot water while he was taking a shower.  (Second Am. Compl. § II.D.)  He seeks monetary

damages as a result.  (*Id.* § V.)

    Compasso argues for summary judgment on the grounds that:  (i) Plaintiff failed to

exhaust his administrative remedies, (*see* Moving Def.'s Mem. of Law in Supp. of Mot. ("Def.'s

Mem.") 6–9 (Dkt. No. 70)); (ii) Plaintiff cannot recover for any mental or emotional injury

because he suffered no physical injury, (*see id.* at 10); and (iii) the evidence proves the alleged

incident could not have occurred, (*see id.* at 11).  Because exhaustion "is a threshold matter for

the [C]ourt to decide, even when there is a disputed issue of fact," *Abernathy v. Strada*, No. 12-

CV-6072, 2015 WL 997980, at *3 (E.D.N.Y. Mar. 6, 2015); *see also Messa v. Goord*, 652 F.3d

305, 308 (2d Cir. 2011) (per curiam) (holding that there is no "right to a jury trial on factual

disputes regarding an inmate's failure to exhaust administrative remedies as required by the

PLRA"), the Court first turns to the requirements of the Prison Litigation Reform Act ("PLRA"),

42 U.S.C. § 1997e(a).

    The PLRA provides that "[n]o action shall be brought with respect to prison conditions

under [§] 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or

other correctional facility until such administrative remedies as are available are exhausted."  42

U.S.C. § 1997e(a).  The exhaustion requirement applies to all personal incidents while in prison,

*see Porter v. Nussle*, 534 U.S. 516, 532 (2002) (holding exhaustion is required for "all inmate

suits about prison life, whether they involve general circumstances or particular episodes");

*Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir. 2012) (per curiam) (same), and includes actions for monetary damages despite the fact that monetary damages are not available as an administrative remedy, *see Booth v. Churner*, 532 U.S. 731, 741 (2001) (holding exhaustion is required "regardless of the relief offered through administrative procedures").  Moreover, the PLRA mandates "'proper exhaustion'—that is, 'using all steps that the agency holds out, and doing so properly,'" which "entails . . . 'completing the administrative review process in accordance with the applicable procedural rules.'"  *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (alterations omitted) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88, 90 (2006)).  Indeed, the PLRA demands "strict compliance with the grievance procedure . . . , or else dismissal must follow inexorably."  *McCoy v. Goord*, 255 F. Supp. 2d 233, 246 (S.D.N.Y. 2003) (alteration and internal quotation marks omitted).  Nevertheless, "[b]ecause failure to exhaust is an affirmative defense, defendants bear the initial burden of establishing, by pointing to legally sufficient sources such as statutes, regulations, or grievance procedures, that a grievance process exists and applies to the underlying dispute."  *Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015) (alterations, citations, and internal quotation marks omitted).

Given this framework, the Court must answer the following questions:  (1) did Plaintiff exhaust his administrative remedies, and (2) if not, does some exception permit his claim to proceed all the same?

### 1.  Did Plaintiff Exhaust?

As an initial matter, Compasso has satisfied his burden of showing that a grievance procedure existed and covered the dispute at hand by submitting a copy of the Rule Book, (Smith Aff. Ex. B), of which this Court takes judicial notice as a matter of public record, *see Perez v. City of N.Y.*, No. 14-CV-7502, 2015 WL 3652511, at *3 (S.D.N.Y. June 11, 2015) (taking

judicial notice of prison regulations).  Under the multi-step process outlined on page 16 of the

Rule Book, inmates must first attempt to informally resolve any grievance with the officer

working in their housing area.  (Smith Aff. Ex. C ¶¶ 1–2.)  If the issue cannot be informally

resolved, the inmate must ask in writing to be interviewed by the Grievance Coordinator or file a

formal written grievance.  (*Id.* ¶ 1.)  The Grievance Coordinator then reviews the grievance and,

within five business days of receipt of the grievance, issues a written determination.  (*Id.* ¶¶ 4–5.)

Within two business days of receiving the Grievance Coordinator's decision, the inmate may

appeal to the Jail Administrator in writing.  (*Id.* ¶ 6.)  The Jail Administrator or his designee must

respond in writing with a determination of the appeal within five business days of receipt, (*id.*),

upon which the inmate has three business days to appeal that decision to the State Commission

of Correction, (*id.* ¶ 8).  The Citizens' Policy and Complaint Review Council then must issue a

written determination within 45 business days of receiving the appeal.  (*Id.* ¶ 10.)

    Here, it is undisputed that Plaintiff did not exhaust the Jail's grievance procedure.  The

Second Amended Complaint expressly acknowledges that Plaintiff did not file a grievance

relating to his allegations against Compasso (or D'Agata, for that matter), (*see* Second Am.

Compl. §§ IV.D, IV.F), and Plaintiff testified to the same during his deposition, (*see* Pl.'s Dep.

51, 97, 99; *accord* Def.'s 56.1 ¶¶ 17, 33).[11]  Plaintiff's failure to exhaust, however, does not end

---

[11] Although Plaintiff does not press the point, no case could be made that Plaintiff, in effect, exhausted his remedies inasmuch as prison officials must have been aware of his allegations against Compasso.  To the contrary, merely "[a]lerting . . . prison officials as to the nature of the wrong for which redress is sought does not constitute proper exhaustion."  *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007) (alteration, citations, and internal quotation marks omitted); *see also Perez*, 2015 WL 3652511, at *4 (explaining that the "[p]laintiff's allegation that he advised others of his grievance does not excuse his failure to exhaust the administrative process specified in the [inmate grievance procedure]").  "Regardless of whether . . . informal complaints put the prison officials on notice of his grievance 'in a substantive sense,' . . . to satisfy the PLRA[,] a prisoner must also procedurally exhaust his available administrative remedies."  *Macias*, 495 F.3d at 43 (italics omitted).  Substantive notice alone is insufficient

12

the inquiry.  Though "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court," *Jones v. Bock*, 549 U.S. 199, 211 (2007), "a prisoner need exhaust only 'available' administrative remedies," *Ross v. Blake*, —S. Ct.—, 2016 WL 3128839, at *5 (June 6, 2016).

### 2.  Does an Exception Apply?

Historically, the Second Circuit has recognized certain exceptions to the exhaustion requirement of the PLRA, *see Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004).  The so-called *Hemphill* factors forgive an inmate's non-exhaustion where:  "(1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense . . . or acted in such a[] way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure" to exhaust his remedies, *Ruggiero v. Cty. Of Orange*, 467 F.3d 170, 175 (2d Cir. 2006) (citing *Hemphill*, 380 F.3d at 686).  However, the Supreme Court recently rejected the "unwritten 'special circumstances" exception" and held that "[t]he only limit to § 1997e(a)'s mandate is the one baked into its text:  An inmate need exhaust only such administrative remedies as are 'available.'" *Ross*, 2016 WL 3128839, at *11.[12]

---

because "[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance," and "[t]he prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules." *Woodford*, 548 U.S. at 94.

[12] Although the Supreme Court in *Ross* reversed a decision from the Fourth Circuit, *see* 2016 WL 3128839, at *11, it noted that the rejected "extra-textual exception" was "originally formulated by the Second Circuit," *id.* at *4; *see also Blake v. Ross*, 787 F.3d 693, 698 (4th Cir.) ("[T]here are certain 'special circumstances' in which, though administrative remedies may have been available and though the government may not have been estopped from asserting the affirmative defense of non-exhaustion, the prisoner's failure to comply with administrative procedural requirements may nevertheless have been justified." (alteration in original) (quoting

To be "available" under the PLRA, a remedy must afford "the possibility of some relief for the action complained of." *Booth*, 532 U.S. at 738; *see also Ross*, 2016 WL 3128839, at *7 ("[A]n inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" (quoting *Booth*, 532 U.S. at 738)). The Supreme Court has identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Ross*, 2016 WL 3128839, at *7.  First, a remedy is "unavailable" where "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* (citing *Booth*, 532 U.S. at 736, 738).  The same is true where an administrative procedure is "so opaque" that "no ordinary prisoner can make sense of what it demands." *Id.* at *8.  Finally, "interference with an inmate's pursuit of relief"—whether "through machination, misrepresentation, or intimidation"—"renders the administrative process unavailable." *Id.*[13]

Here, it is undisputed that the Jail "provided grievance procedures that inmates . . . could utilize," *Hemphill*, 380 F.3d at 686—specifically, the multi-step process outlined in the Rule Book, (*see* Smith Aff. Ex. C)—and that Plaintiff received a copy of these regulations upon his incarceration in December 2011.  He acknowledged this receipt in writing at that time, (*see* Def.'s 56.1 ¶ 13 ("Plaintiff signed, upon his incarceration at the . . . Jail on his personal property envelope on December 29, 2011, acknowledging he received a copy of the . . . Rule Book which contains the grievance procedure."); Pl.'s Dep. 29–30 (testifying that his signature acknowledged

---

*Giano v. Goord*, 380 F.3d 670, 676 (2d Cir. 2004))), *cert. granted*, 136 S. Ct. 614 (2015), and *vacated*, 2016 WL 3128839 (2016).

[13] It bears mention that the Supreme Court noted its "expect[ation] that these circumstances will not often arise," "[g]iven prisons' own incentives to maintain functioning remedial processes." *Ross*, 2016 WL 3128839, at *7 (citing *Woodford*, 548 U.S. at 102).

his receipt of a copy of the Rule Book and that he understood what he was signing); *see also* Smith Aff. Ex. A), and then testified to that effect at his deposition, (*see* Pl.'s Dep. 30 (testifying that he received a copy of the Rule Book on December 29, 2011); *id.* at 98 (testifying that he had been given a copy of the Rule Book)).  He had also received a copy of the Rule Book upon each of his prior occasions of incarceration at the Jail.  (*See* Def.'s 56.1 ¶ 12; Smith Aff. ¶ 4; Pl.'s Dep. 31, 98.)  "Receipt of such a handbook generally indicates that the inmates were informed of the grievance procedure so as to make that procedure 'available' to them."  *Smith v. City of N.Y.*, No. 12-CV-3303, 2013 WL 5434144, at *10 (S.D.N.Y. Sept. 26, 2013); *see also Spencer v. Harrison*, No. 12-CV-1721, 2014 WL 411647, at *4–5 (N.D.N.Y. Feb. 3, 2014) (finding "it is clear that a grievance procedure was available to the inmate" where the defendants "filed a copy of the [i]nmate [h]andbook, setting forth the grievance procedure, together with a receipt signed by [the] plaintiff"); *Oliver v. Outhouse*, No. 06-CV-1412, 2008 WL 508909, at *4 (N.D.N.Y. Feb. 21, 2008) ("The record shows that [the] [p]laintiff received and signed an acknowledgment of receipt for the [i]nmate [h]andbook upon his entrance into [the] [j]ail, putting him on notice of the grievance procedure.").

Though Plaintiff asserts that he "d[id]n't know about a grievance procedure," (Pl.'s Dep. 97–98; *see also* Second Am. Compl. § IV.F (alleging that he "didn't know that [he] could file a grievance on any of these issues" and "didn't ever know at the time what a grievance was")), "[i]gnorance of the grievance procedures does not excuse [his] failure to follow them," *Bryant v. Williams*, No. 08-CV-778, 2009 WL 1706592, at *8 (W.D.N.Y. June 17, 2009); *see also Collins v. Gruen*, No. 12-CV-6022, 2014 WL 4923586, at *9 (W.D.N.Y. Sept. 30, 2014) (rejecting the plaintiff's "claims that he was unaware of the grievance procedures" because, inter alia, upon entry to the jail the plaintiff acknowledged in writing his receipt of the handbook detailing the

15

inmate grievance procedure).[14]  The availability of administrative remedies is adjudged not by

whether the Plaintiff was unaware of them, but instead by whether "a similarly situated

individual of ordinary firmness" would have deemed them available.  *Hemphill*, 380 F.3d at 688

(internal quotation marks omitted).  By submitting a copy of the Rule Book, (Smith. Aff. Ex. B),

and a signed acknowledgement of its receipt by Plaintiff, (Smith Aff. Ex. A), Compasso has met

his burden of demonstrating the availability of the Jail's grievance procedure.

　　　　Nevertheless, "administrative remedies may . . . be deemed unavailable if the plaintiff

can demonstrate that other factors—for example, threats from correction officers—rendered a

nominally available procedure unavailable as a matter of fact."  *Hubbs*, 788 F.3d at 59 (citing

*Hemphill*, 380 F.3d at 687–88); *see also Ross*, 2016 WL 3128839, at *8 (noting that an

administrative procedure may be unavailable "when prison administrators thwart inmates from

taking advantage of a grievance process through machination, misrepresentation, or

intimidation").  Because the availability inquiry is an objective one, *see Hemphill*, 380 F.3d at

688, "a plaintiff's mere allegation of a generalized fear of retaliation is insufficient to excuse his

failure to file a grievance," *Brown v. Napoli*, 687 F. Supp. 2d 295, 297 (W.D.N.Y. 2009).  In his

Second Amended Complaint, Plaintiff alleges that he did not pursue an administrative remedy, in

part, because he feared retaliation from Compasso.  (Second Am. Compl. § IV.F.)  However,

while he alludes to a general fear of retaliation if he were to file a grievance, (*see, e.g.*, Pl.'s Dep.

78 (testifying that he "didn't tell [Nurse Joanne] that it was Compasso who did it, because [he]

---

[14] Later in the Second Amended Complaint, Plaintiff clarifies this statement, alleging he
"didn't know how [he] could file a complaint against the defendant[]s, *until [he] started looking
into doing one* . . . ."  (Second Am. Compl. § IV.G (emphasis added).)  The Jail, however, cannot
be blamed where Plaintiff had "close[d] his eyes to what he reasonably should have known."
*Arnold v. Goetz*, 245 F. Supp. 2d 527, 537 (S.D.N.Y. 2003).  Moreover, Plaintiff's alleged
ignorance is belied by his testimony as to some degree of familiarity with the Rule Book.  (*See*
Pl.'s Dep. 31, 98.)

was scared" and did not tell any corrections officers "[b]ecause [he] was scared" "[o]f retaliation"); Pl.'s Opp'n 7 (alleging that "[he] didn't tell anyone[] at the time" because he "feared for [his] life")), he provides no specific examples of any *actual* threat to his physical safety, *see Rodriguez v. Cty. of Suffolk*, No. 13-CV-2070, 2014 WL 3531897, at *5 (E.D.N.Y. June 30, 2014) ("Courts tend to find mere 'generalized fear' when no actual threat was made." (citation omitted)), *adopted by* 2014 WL 3532529 (E.D.N.Y. July 14, 2014); *Fuentes v. Balcer*, No. 10-CV-684, 2013 WL 276679, at *5 (W.D.N.Y. Jan. 24, 2013) ("[T]he failure to allege that the inmate was specifically threatened regarding the grievance procedures may lead to the conclusion that a similarly situated individual may have not considered the administrative remedies unavailable." (citing *Snyder v. Whittier*, 428 F. App'x 89, 91 (2d Cir. 2011)).  In fact, Plaintiff testified that Compasso never made any statements that would suggest retaliation, never acted aggressively toward Plaintiff after the alleged incident, and never even spoke to Plaintiff at any time after the alleged incident.  (*See* Pl.'s Dep. 78–79.)  He merely felt that Compasso was "a very aggressive person."  (*Id.* at 78.)  Thus, Plaintiff has presented no more than a "mere allegation of a generalized fear of retaliation," *Brown*, 687 F. Supp. 2d at 297, which will not excuse his failure to file a grievance concerning his claim against Compasso, *see Phelan v. Swan*, No. 11-CV-314, 2015 WL 807041, at *4 (N.D.N.Y. Feb. 26, 2015) (noting that "[the plaintiff] has asserted nothing but an 'allegation of a generalized fear of retaliation' following the [relevant] incident, which is insufficient to excuse a failure to file a grievance").[15]

---

[15] Moreover, this alleged fear is refuted by Plaintiff's own testimony, during which he stated that no one had threatened him in regard to filing a grievance.  (*See* Pl.'s Dep. 99–100.) "Inconsistencies aside, [P]laintiff's [Second Amended] [C]omplaint and deposition testimony allege no more than 'allegations of a generalized fear of retaliation,' which are insufficient to excuse his failure to file a grievance concerning this issue."  *Delgado v. Potter*, No. 13-CV-728, 2015 WL 667551, at *2 (N.D.N.Y. Feb. 17, 2015).

Nor can administrative remedies be deemed unavailable here on the basis of the other delineated circumstances, as Plaintiff has set forth no facts suggesting that the Jail's grievance procedure either lacked the potential to provide relief, *see Ross*, 2016 WL 3128839, at *7, or was "so opaque" as to be, "practically speaking, incapable of use," *id.* at *8. Therefore, after considering the allegations in the Second Amended Complaint, Plaintiff's opposition papers, and the evidence presented, the Court finds no basis for excusing Plaintiff's failure to exhaust his administrative remedies.[16]  The PLRA thus bars his claim against Compasso. *See Jones*, 549 U.S. at 211.[17]

---

[16] In *Ross*, the Supreme Court stressed unavailability as "[t]he only limit to § 1997e(a)'s mandate," 2016 WL 3128839, at *11, but at no point expressly mentioned the second of the *Hemphill* factors, *see* 380 F.3d at 686.  This Court, in an abundance of caution, notes that the second *Hemphill* exception would not apply in this case.  For one, because Compasso raised Plaintiff's failure to exhaust as an affirmative defense in answering the Second Amended Complaint, (*see* Moving Def.'s Answer ¶¶ 45–47 (Dkt. No. 57); *accord* Def.'s 56.1 ¶ 10), he has preserved that defense for purposes of the instant Motion, *see Johnson v. Rowley*, 569 F.3d 40, 45 (2d Cir. 2009) (per curiam) (concluding that the defendant had not waived the non-exhaustion defense because he "raised this defense in his answer to [the] complaint and . . . continued to assert it throughout th[e] litigation"); *Avent v. Solfaro*, No. 02-CV-914, 2010 WL 2985904, at *3 (S.D.N.Y. July 29, 2010) ("Having raised the defense in their [a]nswer, [the] [d]efendants clearly have not waived the exhaustion defense.").  Moreover, an inmate may invoke estoppel only where the "defendant[] took affirmative action to prevent him from availing himself of grievance procedures," *Amador*, 655 F.3d at 102 (internal quotation marks omitted), and Plaintiff admitted that no one stopped him from filing a grievance, threatened him about filing a grievance, or refused to give him a grievance form, (*see* Pl.'s Dep. 99–100).  To reiterate, his generalized fear does not constitute evidence that Compasso prevented Plaintiff from exhausting his administrative remedies.  *See Wells v. Evans*, No. 15-CV-6094, 2016 WL 806871, at *6 (W.D.N.Y. Mar. 2, 2016) ("[A]n inmate-plaintiff's general fear of retaliation cannot estop defendants from raising the failure-to-exhaust affirmative defense.").

[17] Because the Court grants the Motion on this basis, it has not addressed the other grounds for summary judgment argued by Compasso.

III. Conclusion

For the foregoing reasons, Compasso's Motion for Summary Judgment is granted. The

Clerk of the Court is respectfully directed to terminate the pending Motion, (Dkt. No. 67), and

enter judgment for Compasso.

SO ORDERED.
Dated:      June 27, 2016
            White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

19